*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BLUE WATER CANNABIS COMPANY, LLC,
doing business as PUFF CANNABIS COMPANY,
H.O.D. WESTLAND, LLC, HENNDOGS
HOLDINGS, LLC, doing business as GREEN VIBE,
and ATTITUDE WELLNESS, LLC,

        Plaintiffs,

and

MHS WESTLAND, LLC, HARPER VENTURES,
LLC, and EXCLUSIVE BRANDS, LLC,

        Plaintiffs-Appellants,

and

COMBINED CANNABIS OF MICHIGAN, LLC,

        Intervening Plaintiff-Appellant,

and

CANDID LABS, LLC,

        Intervening Plaintiff,

v

CITY OF WESTLAND, WESTLAND CITY
COUNCIL, WESTLAND MARIJUANA
SELECTION COMMITTEE, JAMES HART,
JAMES GODBOUT, TASHA GREEN, MICHAEL
LONDEAU, PETER HERZBERG, MIKE
MCDERMOTT, and ANDREA RUTKOWSKI,

        Defendants-Appellees,

UNPUBLISHED
April 13, 2023

No. 359144
Wayne Circuit Court
LC No. 21-003413-CZ

and

QUALITY ROOTS, INC., MPM-R VIII, LLC, and
KARVOL ENTERPRISES, LLC,

Intervening Defendants-Appellees.

BLUE WATER CANNABIS COMPANY, LLC,
doing business as PUFF CANNABIS COMPANY,
H.O.D. WESTLAND, LLC, HENNDOGS
HOLDINGS, LLC, doing business as GREEN VIBE,
MHS WESTLAND, LLC, HARPER VENTURES,
LLC, and EXCLUSIVE BRANDS, LLC,

Plaintiffs,

and

ATTITUDE WELLNESS, LLC,

Plaintiff-Appellant,

and

CANDID LABS, LLC, and COMBINED
CANNABIS OF MICHIGAN, LLC,

Intervening Plaintiffs,

v                                                      No.   359168
                                                       Wayne Circuit Court
CITY OF WESTLAND,                                      LC No.   21-003413-CZ

Defendant-Appellee,

and

WESTLAND CITY COUNCIL, WESTLAND
MARIJUANA SELECTION COMMITTEE, JAMES
HART, JAMES GODBOUT, TASHA GREEN,
MICHAEL LONDEAU, PETER HERZBERG,
MIKE MCDERMOTT, and ANDREA
RUTKOWSKI,

Defendants,

and

QUALITY ROOTS, INC., MPM-R VIII, LLC, and
KARVOL ENTERPRISES, LLC,

Intervening Defendants-Appellees.

---

Before: CAVANAGH, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

In these consolidated appeals, plaintiffs and intervening plaintiffs are applicants who were denied licenses to sell marijuana in the city of Westland ("the City"). Five separate actions challenging the City's licensing application process were filed in the trial court, which consolidated the cases into one action under LC No. 21-003413-CZ. The City, the Westland City Council, individual council members, and the City's Marijuana Selection Committee (the "Selection Committee") were all named as defendants.[1] Intervening defendants Quality Roots, Inc., and MPM-R VIII, LLC (collectively the "intervening defendants"),[2] are applicants who successfully obtained conditional licenses to operate a marijuana business in Westland. In Docket No. 359144, plaintiffs MHS Westland, LLC ("MHS Westland"), Harper Ventures, LLC ("Harper"), and Exclusive Brands, LLC ("Exclusive"), and intervening plaintiff Combined Cannabis of Michigan, LLC ("Combined Cannabis") (hereinafter collectively referred to as "appellants"), appeal as of right the trial court's September 20, 2021 order granting summary disposition in favor of defendants and intervening defendants pursuant to MCR 2.116(C)(7) and (8). In Docket No. 359168, plaintiff Attitude Wellness, LLC ("Attitude Wellness"), appeals the same order as of right. For the reasons set forth in this opinion, we affirm.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In October 2019, the City adopted the Westland Uniform Marijuana Business Ordinance, § 27-1 *et seq*., to exercise its police, regulatory, and licensing powers over both medical-use and adult-recreational-use businesses selling marijuana to the extent permissible under state law, specifically the Medical Marihuana Facilities Licensing Act, MCL 333.27101 *et seq*., and the Michigan Regulation and Taxation of Marijuana Act (MRTMA), MCL 333.27951 *et seq*. Westland Code, §§ 27-1, 27-2. The City created three types of licenses and allowed licenses to be issued for up to eight business locations. Westland Code, §§ 27-5(a) and 27-6.

---

[1] For ease of reference, all references to "the City" shall include all other defendants associated with the City, unless otherwise indicated.

[2] Karvol Enterprises, LLC, was also an intervening defendant, but it has not filed a brief on appeal.

Applicants were required to submit an application with the City and pay a fee of $5,000, up to $2,500 of which was refundable if an application was denied. Applicants were required to provide proof that they had secured rights to any property intended to be used for their business locations. Applicants were also required to submit proof of prequalification through the Michigan Marijuana Regulatory Agency. Applicants were required to sign and attest that the application, under penalty of perjury, was true to each applicant's information, knowledge, and belief. Westland Code, §§ 27-4 and 27-9.

Completed applications were evaluated on the basis of a written policy approved by the City Council. That policy was required to contain rules for evaluation and selection of the competing applications, and the ordinance also provided that a selection committee would carry out the policy. Westland Code, § 27-12(a). The ordinance provides that "[t]he selection committee shall score and rank applications for each category of business location based on the rules in the application consideration policy." Westland Code, § 27-12(b).

On May 18, 2020, the City adopted the Marijuana Business Application Consideration Policy (the "Policy") after it was approved by the City Council, which set forth the rules for evaluating license applications. Section 1.11 of the Policy established a Selection Committee as an administrative subcommittee, comprised of three city administrative employees appointed by the mayor, to sort, review, and score the applications, among other duties outlined in the Policy. The Policy specifically provided that the Selection Committee shall not make a final decision regarding the awarding of licenses. Policy, § 1.11.

The Selection Committee was required to conduct a preview of all applications, and all properly filed applications were to be separated into different licensing categories. Policy, §§ 3.1-3.6. The Selection Committee was then required to review and score the applications according to the Policy's guidelines. Policy, § 3.7. The Selection Committee was required to score the applications using the scoring rubric adopted by the City, which defined certain categories to consider for each planned business and the points to award in order to arrive at a ranking of the applications in each license category. Policy, § 4.1. The Policy also adopted procedures to follow in the event of ties among applicants. This included first giving greater weight to certain scores under the scoring rubric. Policy, §§ 4.8-4.10. If there was still a tie after those adjustments, the Policy required that a blind lottery drawing be held to determine the ranking of applications. Policy, §§ 4.11, 4.12, and 4.13. The Selection Committee was required to compile a list of the applicants and their scores, ranking them from highest to lowest, and to send that list to the City Council and to each applicant. Policy, §§ 5.1 and 5.2.

Each applicant had a 10-day period from notice of its right to appeal to file an appeal with the Marijuana Business Review Board (the "Review Board") to challenge its score. Policy, §§ 5.3 and 5.4. The Review Board was to consider each written appeal at a public hearing and applicants appealing also had a right to orally address the Review Board for 10 minutes. Policy, §§ 5.5 and 5.6. After hearing all appeals, the Review Board was required to issue its recommendation to either uphold the list or make modifications. Any ties were to be resolved in the same manner that the Selection Committee used to resolve ties. After the Review Board's recommendations were forwarded to the City Council, the City Council was to consider and certify the list with any adjustments. The City Council's decision regarding the list was final. Policy, §§ 5.7 and 5.8. Only the highest ranked applicants in each license category would be considered for and offered a

conditional license. The City would not maintain a waiting list for unsuccessful applicants. Policy, §§ 6.1-6.3.

Plaintiffs and intervening plaintiffs are unsuccessful applicants for marijuana licenses in Westland. MHS Westland, Harper, and Exclusive asserted multiple claims against the City, the City Council, the Selection Committee, and individual council members for (1) violation of their rights to due process, (2) violation of the Open Meetings Act (OMA), MCL 15.261 *et seq.*, (3) violation of the MRTMA, (4) violation of the City's own marijuana business ordinance, (5) gross negligence, and (6) breach of contract.[3]

Briefly, the substance of the factual allegations made by MHS Westland, Harper, and Exclusive in their amended complaints was primarily that the criteria adopted by the City in its ordinance did not comply with the MRTMA requirement that applicants who are best suited to operate a facility within a city be selected, because points were awarded on the basis of property characteristics and development plans, which are not factors contemplated by the MRTMA, thereby allowing the City to award licenses on the basis of its subjective belief of what was best for the City, given its aesthetic and economic development aspirations. They further alleged that defendants failed to properly follow or apply the selection criteria when scoring the individual applications. For instance, plaintiffs alleged that defendants fabricated or gave their own meaning to the term "property" as not including buildings and structures, but rather just land or vacant land. According to the amended complaints, this difference resulted in MHS Westland and Harper both receiving scores that eliminated them from qualifying for a license in the area north of Ford Road. MHS Westland and Harper alleged that they would have received scores of 100 points, not 92 out of a possible 100 points, if the criteria had been properly applied. Further, the applicants who were awarded licenses were selected after the applicants with the highest scores participated in a lottery. MHS Westland and Harper alleged that if not for the scoring errors, they would have been placed in the top tier and allowed to advance to the lottery to determine the licensees.

MHS Westland and Harper further alleged that decisions on the applications were made in secret by the Selection Committee. They also claimed that there was bias and favoritism in the application process, although examples were not provided. Plaintiffs alleged that several applicants appealed the Selection Committee's final scoring decisions to the Review Board, but the Review Board simply "rubber stamped" the committee's scoring decisions and none of their scores were changed. Plaintiffs also alleged that some council members raised questions about the selection process and were provided only three days to review the final recommendations of the Selection Committee before voting on the final licenses, which involved reviewing 21,000 pages of application materials. Furthermore, plaintiffs questioned the appellate process because the Review Board did not include participation by attorneys. On March 15, 2021, defendant and council member Tasha Green raised concerns about the selection process, including the interpretation of the term "property" and the lack of time to review the applications. Defendant and council member Peter Herzberg also took issue with the fact that all appeals were denied at once and no changes were made through the appellate process. On March 15, 2021, the City

---

[3] An additional claim for violation of the Freedom of Information Act, MCL 15.231 *et seq.*, is not at issue on appeal.

-5-

Council voted to approve a resolution awarding the licenses to those applicants originally recommended by the Selection Committee. Exclusive made similar allegations in its amended complaint. Exclusive received a score of 81 out of 100 points, but believed that it should have received 100 points if its application had been properly scored.

Attitude Wellness also asserted in its complaint that the City's scoring criteria conflicted with the MRTMA and that the use of a blind-draw lottery also did not comply with the MRTMA. Combined Cannabis alleged violations of the MRTMA in the licensing process and also due-process violations related to the scoring of the applications and awarding of licenses.

The City moved for summary disposition under MCR 2.116(C)(7) and (8), primarily arguing that all of the complaints were barred because the applications submitted by each plaintiff or intervening plaintiff contained a waiver clause that prohibited the actions, and reflected their acknowledgment that the application process is a competitive process for which the applicant waived any right to challenge the City's selection process or selection criteria. Intervening defendants also moved for summary disposition under MCR 2.116(C)(8), arguing that plaintiffs' various claims failed as a matter of law.

The trial court ruled that the City and intervening defendants were entitled to summary disposition on the basis of the waivers in the application forms. The court also ruled that the OMA was not violated and that the City's ordinance did not conflict with the MRTMA.

## II. JURISDICTIONAL CHALLENGES

Preliminarily, we address intervening defendants' argument that this Court does not have jurisdiction over either appeal. Whether this Court has jurisdiction to hear an appeal is a question of law, which this Court reviews de novo. *Tyrrell v Univ of Mich*, 335 Mich App 254, 260-261; 966 NW2d 219 (2020).

The claims of appeal in Docket Nos. 359144 and 359168 were filed from the trial court's September 20, 2021 order granting summary disposition for defendants and intervening defendants. Intervening defendants argue, however, that res judicata bars the instant appeals because an earlier application for leave to appeal the same order was denied by this Court in Docket No. 358632. We disagree.

The prior application was filed for the limited purpose of requesting a stay or a status quo order because plaintiffs intended to pursue postjudgment motions in the trial court. While the application was pending, MHS Westland, Harper, and Exclusive filed a motion for reconsideration of the September 20, 2021 order, which the trial court denied on October 14, 2021. The instant appeals were filed within the 21-day period after the trial court denied the motion for reconsideration. Thereafter, this Court denied the application in Docket No. 358632 "for failure to persuade the Court of the need for immediate appellate review." *Bluewater [sic] Cannabis Co LLC v City of Westland*, unpublished order of the Court of Appeals, entered November 10, 2021 (Docket No. 358632).

Initially, there is no merit to intervening defendants' argument that these appeals are barred by res judicata. "Res judicata bars a second action on the same claim if (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter

-6-

in the second case was, or could have been, resolved in the first." *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 282; 983 NW2d 401 (2022) (quotations and citations omitted). The flaw in intervening defendants' res judicata argument is that the prior application in Docket No. 358632 was not decided on the merits. This Court's order states that the application was denied "for failure to persuade the Court of the need for immediate appellate review." When an application is denied for failure to persuade the Court of the need for immediate appellate review, it is not a decision on the merits. See *Rott v Rott*, 508 Mich 274, 288-289; 972 NW2d 789 (2021). Therefore, res judicata does not apply.

Furthermore, intervening defendants do not dispute that the trial court's September 20, 2021 order granting summary disposition for defendants and intervening defendants is a final order under MCR 7.202(6), and is appealable as of right under MCR 7.203(A)(1). The claims of appeal were timely filed because they were filed within the 21-day period after the trial court denied a timely filed motion for reconsideration. See MCR 7.204(1)(d). Therefore, this Court has jurisdiction over these appeals.

To the extent that intervening defendants argue that the claim of appeal in Docket No. 359144 should be deemed to have been untimely filed with respect to Combined Cannabis because it did not join in the motion for reconsideration filed by MHS Westland, Harper, and Exclusive, we are not persuaded that Combined Cannabis's failure to join in that motion precludes its participation in this appeal because it did not file a claim of appeal within the 21-day period from the entry of the September 20 order, while the motion for reconsideration was still pending. The court rules do not clearly compel such a conclusion. In any event, considering the lack of clarity in the court rules and because Combined Cannabis is similarly situated with the other plaintiffs, to the extent that there may be any uncertainty regarding whether the claim of appeal was timely filed with respect to Combined Cannabis, thereby affecting this Court's jurisdiction as of right, we will exercise our discretion to treat Combined Cannabis's claim of appeal as an application for leave and grant that application, thereby providing this Court with jurisdiction with respect to Combined Cannabis. See *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).

## III. WAIVERS

Appellants and Attitude Wellness argue that the trial court erred by granting summary disposition for defendants and intervening defendants on the basis that their claims were barred by the waiver clauses in the applications that each plaintiff and intervening plaintiff submitted when applying for a license.

A trial court's decision on a motion for summary disposition is review de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition of a claim may be granted under MCR 2.116(C)(7) if the claim is barred by a release. When reviewing a motion under MCR 2.116(C)(7), this Court considers all documentary evidence submitted by the parties and accepts the allegations in the complaint as factually accurate unless affidavits or other documents specifically contradict them. *Shay v Aldrich*, 487 Mich 648, 656; 790 NW2d 629 (2010). This issue also involves the interpretation of the City's application form, as well as constitutional and statutory questions. These are all questions of law for this Court to decide, which are reviewed de novo. *City of Grand Rapids v Brookstone Capital, LLC*, 334 Mich

App 452, 457; 965 NW2d 232 (2020); *Aguirre v Michigan*, 315 Mich App 706, 713; 891 NW2d 516 (2016); *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 13; 614 NW2d 169 (2000).

The City argued in its motions that appellants' claims were barred by waivers in the applications that appellants submitted. The City argued that the waivers were unambiguous and were binding on any applicants who signed them under contract principles, entitling the City to summary disposition under MCR 2.116(C)(7). The application form submitted by each plaintiff or intervening plaintiff contained the following terms:

> The Applicant and Authorized Representative agree to the following on behalf of themselves and their owners, operators, directors, officers, agents, shareholders, investors, heirs, assigns, estates, successors, parents, subsidiaries, and any other holder of any interest whatsoever (collectively, the "Applicant"):
>
> A. Definitions. As used in Part VIII, the following terms have the following meanings:
>
> *Claim*, means any cause of action or potential cause of action that arises out of the operation of or in any way relates to one or more state or local licenses for medical marijuana facilities or adult-use marijuana establishments within the City of Westland, including, causes of action or potential causes of action relating to the City of Westland's application, licensing, inspection, enforcement, renewal, amendment, suspension, or revocation process. This definition includes, but is not limited to, lawsuits arising under statutory, constitutional, contractual, and/or equitable law.
>
> *City*, includes the City of Westland and its representatives, agents, employees, appointed and elected officials, department heads, insurers, contractors, and all boards, commissions, committees, and the members thereof.
>
> B. All of the following apply to all Claims against the City:
>
> (i) *Applicant waives its right to a trial of any kind, in both federal and state court, including the right to participate in any class action litigation.*
>
> (ii) *Applicant consents to individual arbitration of all Claims against the City. Under no circumstances will class action or joint action of any kind be permitted.*
>
> (iii) Arbitration will be in accordance with the then-current rules of JAMS or AAA, or as otherwise agreed to by the parties in writing. An award by the Arbitrator may be entered as a judgment by any court having jurisdiction. Arbitration shall take place in Westland, Michigan and shall be governed by the laws of the State of Michigan, notwithstanding any conflict of law provisions.
>
> (iv) Claims against the City must be brought within six months from the date that a final decision is issued by the City, or such claim will be waived and permanently barred.

(v) If the City prevails on any Claim, the Arbitrator shall award the City its costs and attorney fees for the Claim or Claims.

\* \* \*

F. *Applicant has reviewed the Westland Uniform Marijuana Business Ordinance, the Westland Marijuana Business Application Consideration Policy, and this Application, all in their entirety, and has had the opportunity to consult with legal counsel. By submitting this Application, Applicant agrees that the Application Consideration Policy is a competitive process and Applicant waives any right to challenge the City's selection process or selection criteria.*

G. The issuance of a License or conditional License will be contingent on the Applicant agreeing to any other conditions imposed by the City on the Applicant.

**Under penalty of perjury, I attest, to the best of my information, knowledge, and belief, that I have read and understood the foregoing, and that I am duly authorized to sign this application and bind the Applicant to its terms.** [Emphasis added.]

The trial court agreed with the City that the waivers barred appellants' and Attitude Wellness's claims.

Appellants and Attitude Wellness argue that the waivers are unconstitutional and should not be enforced because they infringe on an applicant's right to free speech under the First Amendment and Const 1963, art 1, § 5, and right to seek redress for injuries inflicted by a government's decisions under Const 1963, art 6, § 28.

First, appellants argue that the waivers are unenforceable under the doctrine of unconstitutional conditions. In *AFT Mich v Michigan*, 497 Mich 197, 225-228; 866 NW2d 782 (2015), our Supreme Court explained:

Individuals may under most circumstances voluntarily waive their constitutional rights. Individuals also have no constitutional right to receive any particular governmental benefits. *Falk v State Bar of Mich*, 411 Mich 63, 107; 305 NW2d 201 (1981) (opinion by RYAN, J.), quoting *Elrod v Burns*, 427 US 347, 361; 96 S Ct 2673; 49 L Ed 2d 547 (1976). However, under limited circumstances, the government may be prevented from *denying* a benefit to an individual because that person has exercised a constitutional right; this is known as the "doctrine of unconstitutional conditions." *Dolan v City of Tigard*, 512 US 374, 385; 114 S Ct 2309; 129 L Ed 2d 304 (1994). Not every condition attached to a governmental benefit is an unconstitutional one, and although the exact boundaries of the doctrine are difficult to define, the fundamental principle underlying the doctrine is clear: the governmental cannot attach conditions to government benefits that effectively *coerce* individuals into relinquishing their constitutional rights.

The United States Supreme Court has applied the doctrine of unconstitutional conditions to claims arising under the Takings Clause of US Const,

Ams V and XIV and has created a specific test of sorts: a governmental benefit given in exchange for a seemingly voluntary transfer of private property interests to the government may violate the doctrine of unconstitutional conditions if the condition lacks a nexus between the burden that the condition imposes on the property owner and the government's interest advanced by the condition, or if the burden that the condition imposes is not roughly proportionate to the governmental interest advanced by the condition. Thus far, the Court has only applied this test in the context of "land-use decisions conditioning approval of development on the dedication of property to public use." *City of Monterey v Del Monte Dunes at Monterey, Ltd*, 526 US 687, 702-703; 119 S Ct 1624; 143 L Ed 2d 882 (1999).

This Court has never applied the doctrine of unconstitutional conditions to Const 1963, art 10, § 2. Because plaintiffs have not argued that we should analyze their unconstitutional conditions argument in a manner in any way distinct from the United States Supreme Court's application of the doctrine to claims arising under US Const Ams V and XIV, we decline to do so here. For the immediate purposes of plaintiff's unconstitutional conditions argument, we analyze Const 1963, art 10, § 2 and US Const Ams V and XIV coextensively, although we are not bound to do so. [Footnotes omitted.]

See also *Tallman v Dep't of Natural Resources*, 421 Mich 585; 365 NW2d 724 (1984).

The parties acknowledge that the unconstitutional conditions doctrine has been applied in limited circumstances in this state, none of which involve a local government requiring applicants to accept the terms of a release or waiver as a condition of applying for a business license. However, the parties refer this Court to *Barden Detroit Casino, LLC v Detroit*, 59 F Supp 2d 641, 643, 648-649 (ED Mich, 1999), aff'd 230 F3d 848 (CA 6, 2000), in which the court reviewed a release that the plaintiff, Barden Detroit Casino, LLC ("BDC"), was required to sign to participate in a competitive process for the selection and licensing of casino developers in the city of Detroit. The release in that case barred all claims "arising out of or directly or indirectly related to . . . the selection and evaluation of" the submitted proposals, as well as the release and use of any information submitted by applicants. *Id*. at 658. One of the claims raised by BDC was a constitutional challenge to the city's ordinance, which gave preference in the casino licensing process to applicants that had campaigned on behalf of the voter initiative that legalized casinos. This preference, and a similar one under state law, were challenged on First Amendment grounds. *Id.* at 643, 645-648.

The court declined to follow the unconstitutional conditions doctrine and instead relied on *Town of Newton v Rumery*, 480 US 386, 398; 107 S Ct 1187; 94 L Ed 2d 405 (1987), in which the Supreme Court recognized that an individual may release constitutional claims so long as the release is entered into voluntarily and is not the product of misconduct by the municipality. *Barden*, 59 F Supp 2d at 661-665. Lower courts must evaluate such agreements on a case-by-case basis and determine (1) whether the agreement was voluntary, (2) whether the agreement was the product of misconduct, and (3) whether enforcement of the agreement would adversely affect the relevant public interest. *Id*. In *Barden*, the court ultimately followed the *Rumery* line of cases, rather than applying the unconstitutional conditions doctrine, concluding that BDC was not

obligated to forfeit its First Amendment rights by signing the release. Instead, BDC released the right to bring suit and challenge the casino selection process. *Id.* at 665.

The court in *Barden* went on to evaluate the *Rumery* factors and Detroit's requirement that developers accept the release as part of the selection process, for which they did not have a right to negotiate, and concluded that this requirement did not leave BDC without options. BDC could have opposed signing the release and challenged it immediately or signed the release while reserving its rights and brought suit if its proposal was not accepted. Instead, BDC, with time to review the release and the assistance of counsel, opted to sign it and proceed. *Id*. at 665-666. The record showed that BDC voluntarily and intelligently signed the release and should have known that it released all claims, including constitutional claims. *Id*. at 666-667. Further, there was no evidence of misconduct by Detroit, such as burying the release or attempting to mislead any prospective developers. *Id*. at 667-668. Finally, the court explained that there were important public policy reasons that supported the release because of the high stakes involved in casino development and the likelihood that spurned developers would pursue litigation, exposing taxpayers to high legal expenses. Thus, "it was perfectly reasonable for the Detroit Defendants to require a broad release of all claims" and "it would have been irresponsible not to require a release." *Id*. at 668. Furthermore, BDC had options to challenge the proceedings without signing the release. *Id*. at 668-669.

On appeal, the Sixth Circuit Court of Appeals affirmed the district court's decision to grant summary disposition for the defendants, but based its decision on the ground that BDC lacked standing to sue the defendants because the claimed preference for developers who supported the legislation authorizing the development of casinos was never actually applied. *Barden Detroit Casino, LLC v Detroit*, 230 F3d 848, 849-855 (CA 6, 2000). Because the Sixth Circuit held that BDC lacked standing, it declined to reach the question of the enforceability of the release. *Id*. at 849. However, the court briefly discussed the issue as follows:

This is not to suggest endorsement of either the preference provision or the release that prospective casino operators were required to sign. . . .

As for the validity of the release, we observe that waivers of constitutional rights are not to be presumed lightly. See, *e.g., D.H. Overmyer Co. v. Frick Co*., 405 U.S. 174, 185, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Ohio Bell Tel. Co. v. Public Utils. Comm'n*, 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093 (1937) ("We do not presume acquiescence in the loss of fundamental rights"). Insistence upon execution of the release as a condition of participation in the selection process may or may not be constitutional, but Barden would be out of the running in any event. [*Barden*, 230 F3d at 855.]

Because the Sixth Circuit ultimately did not express an opinion on the issue, the district court's decision in *Barden* is instructive.

Appellants argue that this case is distinguishable from *Barden* because that case involved a contract, not legislation or an application for a license. They contend that consideration is lacking

in this case to support the existence of any contract. We disagree. The City's agreement to review the license applications and provide appellants and Attitude Wellness with a potentially lucrative business opportunity constituted consideration for the waivers. Thus, the waivers are not void for lack of consideration. See *Barden*, 59 F Supp 2d at 669-670.

Appellants and Attitude Wellness have not identified a significant or fundamental constitutional right that has been impacted by the waivers they signed when submitting their applications for marijuana licenses. Appellants and Attitude Wellness argue that their right to seek judicial review of their claims in a court of law is a constitutionally protected right. In support of this argument, they cite *Thaddeus-X v Blatter*, 175 F3d 378, 391 (CA 6, 1999), which involves the First Amendment's protection of the right to petition the government for a redress of grievances and prisoners' constitutional right of access to the courts. The due-process right to access the courts and the First Amendment's right to petition government officials through the courts for redress of grievances are fundamental rights. *Morales v Turman*, 326 F Supp 677, 680 (ED Tex, 1971). See also Const 1963, art 1, § 5.

Even accepting as true the argument that the waiver clauses implicate constitutional rights to petition the government through the courts, the record does not allow appellants and Attitude Wellness to now avoid enforcement of those waivers. As explained in *Barden*, *Rumery* and cases following that line of reasoning recognize that voluntary agreements to waive constitutional rights can be enforced if the necessary conditions are met. Accordingly, any right by appellants and Attitude Wellness to seek redress against the City through the courts is waivable. Appellants voluntarily submitted their applications, knowing that the terms of the applications clearly stated that they would be waiving judicial review of the scoring decisions related to the applications. Moreover, the waiver provisions did not completely foreclose any review, but provided that all claims against the City would be subject to arbitration. The City also provided for immediate appeals by applicants dissatisfied with the scoring decisions, which would expedite the application process for all involved. Furthermore, as discussed in *Barden*, appellants could have challenged the waiver clauses before signing them and submitting their applications. Instead, they voluntarily chose to submit their applications and abide by the terms set by the City.

Furthermore, there are no allegations that appellants or Attitude Wellness were misled about the nature of the waiver provision before submitting their applications, or allegations of misconduct by the City. As for the public interest, there is nothing in the waivers that supports the conclusion that they are against public interest. If appellants disagreed with the scoring decisions, they had a right to an immediate appeal of those decisions to the City or through arbitration. Because those methods would be more expedient and less expensive that judicial intervention, they are not against public policy.

Appellants and Attitude Wellness also argue that the waiver language in the application violates Const 1963, art 6, § 28, which provides, in relevant part:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are

-12-

authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. . . .

This provision does not apply to the licensing application process in this case because the licensing process is not a judicial or quasi-judicial proceeding, given that the underlying matter is not an adversarial proceeding. The application process in these matters does not involve the hallmarks of a court proceeding, as described in *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 86; 832 NW2d 288 (2013). Thus, appellants' and Attitude Wellness's reliance on art 6, § 28 is misplaced.

Appellants further argue that the waivers should be declared invalid on the ground that they violate public policy as expressed in the MRTMA. We disagree.

In *Brooklyn Savings Bank v O'Neil*, 324 US 697, 704; 65 S Ct 895; 89 L Ed 1296 (1945), the United States Supreme Court observed:

> It has been held in this and other courts that a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy. *Midstate Horticultural Co. v. Pennsylvania Railroad Co*., 320 U.S. 356, 361, 64 S.Ct. 128, 130, 88 L.Ed. 96; *A. J. Phillips Co. v. Grand Trunk Western Ry*., 236 U.S. 662, 667, 35 S.Ct. 444, 446, 59 L.Ed. 774. Cf. *Young v. Higbee Company*, 324 U.S. 204, 65 S.Ct. 594. Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate.

Appellants rely on *Cudnik v William Beaumont Hosp*, 207 Mich App 378; 525 NW2d 891 (1994), in which this Court held that an exculpatory agreement that a patient was required to sign before undergoing medical treatment was void as against public policy. This Court stated:

> The question whether a hospital may absolve itself from liability for the negligence of its employees via an exculpatory agreement signed by a patient is an issue of first impression in Michigan. The overwhelming majority of other jurisdictions that have addressed this question have held that such agreements are invalid and unenforceable because medical treatment involves a particularly sensitive area of public interest. *Tunkl v Regents of the Univ of California*, 60 Cal 2d 92; 32 Cal Rptr 33; 383 P2d 441 (1963); *Ash v New York Univ Dental Center*, 164 AD2d 366; 564 NYS2d 308 (1990); *Smith v Hosp Authority of Walker, Dade & Catoosa Cos*, 160 Ga App 387; 287 SE2d 99 (1981); *Meiman v Rehabilitation Center, Inc*, 444 SW2d 78 (Ky App, 1969). Today we join in the view of these jurisdictions.

> The leading case on this subject, *Tunkl*, *supra*, is often cited for its list of factors constituting the "public interest," as follows:

> > In placing particular contracts within or without the category of those affected with a public interest, the courts have revealed a

rough outline of that type of transaction in which exculpatory provisions will be held invalid. Thus the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics. It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents. [*Id*. at 98-101.]

Although noting that an agreement need only fulfill some of the foregoing characteristics to be held unenforceable, the court in *Tunkl* found that the agreement in that case fulfilled all of the relevant criteria.

As in *Tunkl*, *supra*, we find that the agreement in this case also fulfills all of the relevant characteristics of a contract affecting the public interest. It is clear that hospitals and the medical profession have been thought to be suitable for public regulation. MCL 333.21501 *et seq*. . . . , MCL 333.17001 *et seq*. . . . . The performance of medical services is of great importance to the public, and is a matter of practical necessity for some members of the public. Defendant hospital holds itself out as willing to perform medical services to members of the public. Defendant hospital certainly possesses an advantage in bargaining strength against any member of the public who seeks its services. Defendant hospital presented plaintiff's decedent with the standardized contract of exculpation, without any provision for some other type of protection against negligence. Finally, it is readily apparent that plaintiff's decedent placed himself under the control of defendant hospital, subject to the risk of carelessness by the hospital or its agents.

Accordingly, for the foregoing reasons we find that the exculpatory agreement in this case is contrary to public policy. The exculpatory agreement constitutes a contract of adhesion, and is unenforceable. *Tunkl*, *supra* at 102. [*Cudnik*, 207 Mich App at 384-387 (footnotes omitted).]

Some of the factors discussed in *Cudnik* are present in this case. The legal sale of marijuana is a business that is subject to public regulation. Those licensed to sell marijuana (particularly for

medicinal uses) are providing a public service that can, according to some, be deemed of great importance. However, the essential nature of the service is questionable, particularly for the recreational use of marijuana, even if it could decrease the illegal sale of marijuana. The City also has an advantage in bargaining power over those applying for licenses, but the public is not affected by that bargaining disparity.

The only impact on the general public that appellants can point to is the risk that a business licensed to act as a distributor of marijuana may not be as qualified as another applicant because an applicant who was denied a license cannot challenge the scoring process in a court of law. But to the extent that this scenario may implicate health or other risks to the general public, there are other ways to protect the public from an unqualified licensee because this industry is highly regulated. Other regulations can protect the general public from a licensee who does not meet or comply with industry or legal standards, including the loss of a license that could be awarded to another applicant.

Although appellants argue that enforcing the waivers will prevent municipalities from being held accountable for factors that do not comply with the MRTMA when reviewing applications, as discussed later in this opinion, the MRTMA allows municipalities to exercise discretion in deciding what factors are relevant to a particular community when evaluating competing applications for a license. Furthermore, ultimate decisions on awarding licenses can be left to the discretion of the municipality. In this case, appellants and Attitude Wellness cannot establish that the City's criteria for evaluating applications violates the MRTMA. For these reasons, we do not believe that the waivers violate public policy. The waivers primarily limit applicants to appealing scoring decisions directly to the Review Board, and scoring decisions are not the type of decision that courts should be reviewing because they primarily involve decisions left to the municipality's discretion.

Although appellants and Attitude Wellness also argue that summary disposition was premature, they do not identify any possible evidence to support invalidating the waivers. In *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292-293; 769 NW2d 234 (2009), this Court explained:

> Generally, summary disposition under MCR 2.116(C)(10) is premature if it is granted before discovery on a disputed issue is complete. However, the mere fact that the discovery period remains open does not automatically mean that the trial court's decision to grant summary disposition was untimely or otherwise inappropriate. The question is whether further discovery stands a fair chance of uncovering factual support for the opposing party's position. In addition, a party opposing summary disposition cannot simply state that summary disposition is premature without identifying a disputed issue and supporting that issue with independent evidence. The party opposing summary disposition must offer the required MCR 2.116(H) affidavits, with the probable testimony to support its contentions. [Footnotes omitted.]

Appellants' and Attitude Wellness's challenges to the validity of the waiver provision are mostly based on legal arguments, rather than grounds that involve any factual inquiry. Moreover, any factual evidence that could support a basis for finding the waivers invalid, such as whether the

applications were signed involuntarily, would be within the control of appellants and Attitude Wellness, but they have not submitted or identified any evidence, such as affidavits from those involved in the application process or other offers of proof, to show that they were misled or that there was any misconduct by defendants that would support a finding that the waivers are not enforceable. Even on appeal, appellants and Attitude Wellness have not offered any factual reasons why the waivers would not be enforceable. Accordingly, we are not persuaded that summary disposition on the basis of the waiver provisions was either inappropriate or premature.

Although appellants claim that the trial court did not engage in the necessary rigorous scrutiny before deciding that their claims were barred by the waivers, the trial court's ruling was consistent with *Rumery* and addressed the arguments made by appellants. Thus, there was no need for the court to further address this issue.

Appellants and Attitude Wellness further argue that the waivers are not enforceable because neither the MRTMA nor the City's own ordinance expressly allow a municipality to enforce such waivers. Appellants contend that the Selection Committee imposed the waivers on its own, which involved an ultra vires, unauthorized act, rendering the waivers unenforceable. We disagree.

In *Vermilya v Delta College Bd of Trustees*, 325 Mich App 416, 418-419; 925 NW2d 897 (2018), this Court stated:

> The foundational principles of statutory interpretation are well established:
>
> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [*Whitman v City of Burton*, 493 Mich 303, 311-312; 831 NW2d 223 (2013) (citations omitted).]
>
> Additionally, statutory language "cannot be read in a vacuum" and instead "must be read in context with the entire act, and the words and phrases used there must be assigned such meanings as are in harmony with the whole of the statute . . . ." *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003) (quotation marks and citation omitted; ellipsis in original).

Appellants argue that the Westland Code, § 27-10a, only authorizes a waiver requirement for applicants who are awarded a license, whereas the portion of the ordinance addressing applications, Westland Code, § 27-9, does not require a waiver provision as part of the application

process.  Accordingly, appellants argue that because waivers are specifically addressed in § 27-10a, the omission of a similar provision in § 27-9 compels the conclusion that inclusion of a waiver provision in an application form is an ultra vires act.  However, "[t]he maxim *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another) 'has force only when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence.' " *Mich Ambulatory Surgical Ctr v Farm Bureau Gen Ins Co of Mich*, 334 Mich App 622, 632; 965 NW2d 650 (2020).  The City's inclusion of a waiver and release provision with regard to licensees is not an indication that the failure to include a waiver clause in its ordinance with regard to application forms demonstrates that the City intended to prohibit waiver clauses in application forms, such that the inclusion of those clauses is ultra vires.  The City otherwise approved the application form and, as discussed earlier, there is no per se prohibition on a municipality relying on a waiver or a release.

Appellants and Attitude Wellness also argue that the waiver clauses are not enforceable because the MRTMA does not expressly permit a municipality to enforce waivers against those applying for licenses.  Appellants and Attitude Wellness further argue that waivers related to decisions by municipalities violates the requirement that municipalities offer a competitive process for selecting licensees.  MCL 333.27959(4).  First, although nothing in the MRTMA expressly permits a municipality to include a waiver or release as part of the application process, it also does not expressly prohibit them.  Thus, appellants have not shown that any provision of the MRTMA clearly prohibits the waivers adopted by the City.

The waivers at issue are limited in scope and permit a claim against the City to be resolved by arbitration, as opposed to a judicial action.  In addition, applicants and Attitude Wellness waived the right to challenge the City's selection process or selection criteria.  This still allowed them to utilize the appeals procedure to challenge the scoring of applications.  To the extent that appellants and Attitude Wellness claim that public policy should bar enforcement of the waivers, we disagree.  In fact, there are public policy considerations that would support the waivers.  As already indicated, applicants are entitled to challenge the scoring of applications as part of the administrative appeals process.  They also are entitled to submit claims to arbitration.  However, they cannot challenge the selection criteria and process, which primarily involves the City's deliberative process at arriving at its decisions.  It is apparent that the limitations imposed by the City on challenges to its licensing decisions are intended to expedite the process and reduce costs to those involved, which benefits all parties involved.

In sum, we agree with the trial court that the waivers are valid and enforceable.  Thus, those claims made by appellants and Attitude Wellness that relate to the City's selection process and criteria are barred.  However, it is necessary to address the claims for violation of the OMA and gross negligence.  A party may not insulate itself from liability for gross negligence or willful and wanton misconduct.  *Lamp v Reynolds*, 249 Mich App 591, 594; 645 NW2d 311 (2002).  Furthermore, any OMA claims do not fall within the scope of the waiver clause relating to the selection process, and allowing waiver of claims under the OMA would also be inconsistent with public policy because it would defeat the purpose of that act.

## IV. CONFLICTS WITH THE MRTMA

Appellants and Attitude Wellness argue that the trial court erred by rejecting their arguments that the City's ordinance and the criteria it adopted to evaluate and score licensing applications conflicted with the MRTMA. We disagree.

Appellants and Attitude Wellness argue that the City did not comply with MCL 333.27959(4), which provides:

> If a municipality limits the number of marihuana establishments that may be licensed in the municipality pursuant to section 6 of this act and that limit prevents the department from issuing a state license to all applicants who meet the requirements of subsection 3 of this section, the municipality shall decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with this act within the municipality.

Appellants and Attitude Wellness argue that this statute only permits municipalities to adopt scoring criteria that consider whether an applicant is suited to operate in compliance with the MRTMA, and thus does not permit consideration of other factors identified by the City, such as the type of proposed property for the marijuana business, whether the property is owned or leased, whether contaminated property will be remediated, or a property's architectural design, because these factors are not relevant to an applicant's suitability to operate in compliance with the MRTMA. The trial court correctly rejected this argument.

Appellants and Attitude Wellness emphasize that MCL 333.27959(4) provides that competition between applicants should be decided on the basis of which applicants "are best suited to operate in compliance with this act," but they ignore the last portion of this sentence that adds "within the municipality." Read as a whole, MCL 333.27959(4) plainly permits a municipality to also consider criteria that are important or relevant to the municipality.

The only additional basis for invalidating the criteria adopted by the City are the general limitations on the powers of municipalities set forth in MCL 333.27956, which provides, in relevant part:

> 2. A municipality may adopt other ordinances that are not unreasonably impracticable and do not conflict with this act or with any rule promulgated pursuant to this act and that:
>
> (a) establish reasonable restrictions on public signs related to marihuana establishments;
>
> (b) regulate the time, place, and manner of operation of marihuana establishments and of the production, manufacture, sale, or display of marihuana accessories;
>
> (c) authorize the sale of marihuana for consumption in designated areas that are not accessible to persons under 21 years of age, or at special events in limited areas and for a limited time; and

-18-

(d) designate a violation of the ordinance and provide for a penalty for that violation by a marihuana establishment, provided that such violation is a civil infraction and such penalty is a civil fine of not more than $500.

3. A municipality may adopt an ordinance requiring a marihuana establishment with a physical location within the municipality to obtain a municipal license, but may not impose qualifications for licensure that conflict with this act or rules promulgated by the department.

4. A municipality may charge an annual fee of not more than $5,000 to defray application, administrative, and enforcement costs associated with the operation of the marihuana establishment in the municipality.

5. A municipality may not adopt an ordinance that restricts the transportation of marihuana through the municipality or prohibits a marihuana grower, a marihuana processor, and a marihuana retailer from operating within a single facility or from operating at a location shared with a marihuana facility operating pursuant to the medical marihuana facilities licensing act, 2016 PA 281, MCL 333.27101 to 333.27801.

MCL 333.27953(x) defines "unreasonably impracticable" to mean "that the measures necessary to comply with the rules or ordinances adopted pursuant to this act subject licensees to unreasonable risk or require such a high investment of money, time, or any other resource or asset that a reasonably prudent businessperson would not operate the marihuana establishment."

Statutes that are unambiguous must be enforced in accordance with their plainly expressed meaning. *DeRuiter v Byron Twp*, 505 Mich 130, 139; 949 NW2d 91 (2020). Local governments are permitted to control and regulate matters of local concern when such power is conferred by the state. Const 1963, art 7, § 22 provides that,

[u]nder general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. *Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law*. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section. [Emphasis added.]

Furthermore, laws concerning municipalities shall be liberally construed in their favor, Const 1963, art 7, § 34. See also *Assoc Builders & Contractors v City of Lansing*, 499 Mich 177, 185-187; 880 NW2d 765 (2016).

However, the state may preempt local regulations either expressly or by implication. *DeRuiter*, 505 Mich at 140. As this Court explained in *DeRuiter*:

Implied preemption can occur when the state has occupied the entire field of regulation in a certain area (field preemption) or when a local regulation directly

conflicts with state law (conflict preemption). . . .  In the context of conflict preemption, a direct conflict exists when "the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits." *People v Llewellyn*, 401 Mich 314, 322 n 4; 257 NW2d 902 (1977).  [*DeRuiter*, 505 Mich at 140 (citation omitted).]

There is nothing in the language of MCL 333.27956 or MCL 333.27959(4) that suggests that the state intended to restrict the criteria a municipality can consider when evaluating competing licensing applications, other than those limitations specifically prescribed in MCL 333.27956.  Thus, a municipality may consider criteria unique to its own community and citizens, subject to the restrictions in MCL 333.27959(4).

Recently, in *Yellow Tail Ventures, Inc v City of Berkley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 357654, 357666, & 358242); slip op at 7-8, this Court rejected the argument that MCL 333.27959(4) restricts a municipality from adopting scoring criteria that is important to or tailored to the community, stating:

First, plaintiffs argue that the City ordinance does not comply with MCL 333.27959(4) . . . . Plaintiffs argue that this provision prohibits the City from adopting scoring criteria focused on community concerns, such as green infrastructure, sustainability, aesthetics, and economic goals.  The City's scoring criteria have no relation to whether an applicant is suited to operate a marijuana establishment in compliance with the MRTMA because the competitive process must select applicants that are "best suited to operate *in compliance with this act*." (Emphasis added.)  Thus, for example, whether an establishment has solar panels has nothing to do with compliance with the act, according to plaintiffs.

But plaintiffs read the MRTMA too narrowly.  They would have this Court stop short in its reading of MCL 333.27959(4) and omit the following emphasized phrase: ". . . best suited to operate in compliance with this act *within the municipality*." (Emphasis added.)  The statute could have been drafted to omit this qualifying language, and the provision would have made grammatical sense.  But, the statute was not written that alternative way, and the statute does include the qualifier "*within the municipality*."  We read this qualifier as permitting a municipality to craft criteria suited to its own local concerns, provided that the criteria conform to the other provisions of the MRTMA.

Against this reading, plaintiffs suggest that this Court treat the phrase "within the municipality" as nugatory.  This we will not do.  It is a long-standing principle of statutory construction that a court must avoid a "construction that would render any part of the statute surplusage or nugatory." *West St Joseph Prop, LLC v Delta Twp*, 338 Mich App 522, 535; 980 NW2d 727 (2021).  The plain and ordinary reading of MCL 333.27959(4) authorizes a municipality to adopt a competitive process to select applicants that are best suited to operate within the municipality.  This includes concerns specific to that community, including green infrastructure, sustainability, aesthetics, and economic goals.

-20-

Plaintiffs next argue that MCL 333.27956 cabins a municipality's authority to impose local regulations on a marijuana establishment. As a general proposition, this is true; but as applied, the City's ordinance does not stray outside the cabin. To see this, consider subsections (2) and (3) of MCL 333.27956, specifically the following emphasized language:

2. A municipality may adopt other ordinances that are *not unreasonably impracticable* and *do not conflict* with this act or with any rule promulgated pursuant to this act and that:

(a) establish reasonable restrictions on public signs related to marihuana establishments;

(b) *regulate the time, place, and manner* of operation of marihuana establishments and of the production, manufacture, sale, or display of marihuana accessories;

(c) authorize the sale of marihuana for consumption in designated areas that are not accessible to persons under 21 years of age, or at special events in limited areas and for a limited time; and

(d) designate a violation of the ordinance and provide for a penalty for that violation by a marihuana establishment, provided that such violation is a civil infraction and such penalty is a civil fine of not more than $500.

3. A municipality may adopt an ordinance requiring a marihuana establishment with a physical location within the municipality to obtain a municipal license, but may not impose qualifications for licensure that conflict with this act or rules promulgated by the department.

These provisions of the MRTMA do not prohibit or restrict a municipality from considering the scoring criteria that plaintiffs complain are improper. Instead, the provisions expressly permit a municipality to adopt an ordinance so long as it (1) is not unreasonably impracticable, (2) does not directly conflict with the MRTMA or promulgated rules, and (3) regulates the time, place, and manner of operation of a marijuana establishment. *Id*.

The criteria used by a municipality to evaluate an application can certainly reflect and anticipate whether that proposed licensee will be willing and able to conform to the local "time, place, and manner" regulations enacted by that municipality. And, so long as those regulations do not impose unreasonably impracticable requirements or conflict with the MRTMA or promulgated rules, then the use of criteria that reflect those local concerns is permissible.

Here, there is nothing in the record to suggest that the criteria of which plaintiffs complain are unreasonably impracticable or conflict with any provision

of the MRTMA or a promulgated rule. Rather, the criteria fit neatly within a reasonable understanding of the MRTMA's "time, place, and manner" provision. Accordingly, the trial court did not err when it granted summary disposition to defendants on this issue.

Accordingly, we reject appellants' and Attitude Wellness's arguments that the City was not permitted to adopt criteria for evaluating an applicant's suitability to operate a marijuana business within the community that were not directly relevant to the applicant's suitability to operate a business in compliance with the MRTMA.

Appellants further claim that some of the criteria is unreasonably impracticable to those who apply for licenses, primarily because some of the factors involve significant costs, such as the construction of new buildings, remediating environmental contamination, providing improvements that benefit the public, and charitable contributions. As noted earlier, a factor will qualify as "unreasonably impracticable" if it will "subject licensees to unreasonable risk or require such a high investment of money, time, or any other resource or asset that a reasonably prudent businessperson would not operate the marihuana establishment." MCL 333.27953(x). It is not unreasonable to expect that some financial investment will be necessary to operate a business establishment. And while the scoring rubric recognizes that some business proposals could involve significant investment, and gives greater weight to proposals that demonstrate a financial investment that will enhance the community, no particular investment is required as a condition for a license. Simply because greater weight is given to new construction or proposals that involve rehabilitation of an existing structure does not impose an unreasonably impracticable requirement for licensure, particular where the choice of investment is left to the applicant. The choice of financial investment behind a proposed business is a legitimate consideration because the City has an interest in assuring that an applicant has the commitment and financial ability to operate a business establishment safely, legally, properly, and in a way that enhances the community.

Appellants note that Combined Cannabis alleged in its complaint that it, "through its owners, has invested hundreds of thousands of dollars in order to obtain a marijuana business license from Westland, including thirty thousand dollars ($30,000.00) in application fees to Westland." Combined Cannabis submitted an unsigned affidavit from its owner, who simply stated that it paid the City $30,000 in application fees. However, appellants do not specify the basis for these alleged fees or costs, or explain how they relate to any requirements of the City's ordinance. Notably, Westland Code, § 27-9(b) and (g), requires an application fee of $5,000, and provides that an applicant "whose application is not approved may be entitled to a partial refund of up to $2,500." Appellants do not explain what the additional fees that Combined Cannabis allegedly paid were for, or how they relate to any requirements of the City's ordinance or the scoring of applications and selection of a licensee. "It is not sufficient for a party 'simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.' " *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1997), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Accordingly, appellants have not demonstrated a basis for appellate relief with respect to this argument.

Appellants also appear to argue that the City made errors in the scoring of their applications, which they ask this Court to review. This is not an issue that a court may review. As

-22-

discussed earlier, the MRTMA permits municipalities to develop selection criteria based on factors important to each community when selecting licenses to operate businesses within a community. The scoring of licensing applications is both a fact-intensive and discretionary process. Nonetheless, the City established an appellate process for applicants to challenge scoring decisions by the Selection Committee before final decisions were made on applications. The weight given to each factor by the Selection Committee and how the City Council eventually arrived at its decisions are not the type of matters that should be judicially reviewed. While the MRTMA provides that the licensing process before a municipality should be competitive, it does not establish standards that a court could apply that would not involve injecting itself into a municipality's discretionary evaluation of the applications. In *Cary Investments, LLC v City of Mount Pleasant*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 356707 & 357862); slip op at 7, this Court stated:

> Finally, plaintiff's allegations of arbitrary scoring by the selection committee ring hollow and do nothing to support a due-process claim. The right to due process guaranteed by the United States Constitution and the Michigan Constitution of 1963 does not empower courts to micromanage the decision-making of governmental entities. See *Krohn*, 175 Mich App at 198. Asking this Court to second-guess the selection committee's scoring of the numerous applicants competing for three licenses fundamentally misapprehends our role in enforcing the constitutional right to due process. Accordingly, because we conclude that the trial court acted correctly in granting the City summary disposition under MCR 2.116(C)(8) based upon the pleadings and that the materials beyond the pleadings justified an award of summary disposition under MCR 2.116(C)(10), we shall affirm the trial court's decision to grant summary disposition to the City.

Thus, to the extent that appellants ask this Court to review the scoring of the applications, we decline to do so.

Appellants and Attitude Wellness further argue that the City improperly adopted a lottery system to determine the licensees. The City's Policy provides the following procedure for resolving ties among applicants who have the same, highest scores:

> 4.8 If any two or more Applicants within the same category are tied, they shall be ranked against other tied Applicants within their category according to 4.9-4.13.

> 4.9 Applicants in the same category whose overall scores are tied shall be ranked in order of their scores in section two (2) of the Scoring Rubric, titled "Financial Investment."

> 4.10 If the above section of this Policy results in a tie among Applicants in the same category, then the tied Applicants shall be ranked in order of their scores in section three (3) of the Scoring Rubric, titled "Community Benefit and Investment."

4.11  Any Applicants that remain tied after Sections 4.9 to 4.10 are applied shall proceed to a blind lottery draw to determine ranking.  Affected Applicants shall be notified of the lottery draw at least 5 business days before the draw.  Applicants may be present during the lottery draw.

4.12  The lottery procedure shall be as follows for each category in which a tie exists:  Applicant names shall be printed on separate slips of rectangular paper of the same size.  The slips shall be at or near 3" x 5" in size.  The paper slips shall not be folded, and all slips shall be placed into a covered box or receptacle of sufficient size to allow a mixing or randomness to the selection of the Applicant names.  The paper slips shall be withdrawn one piece at a time from the box by a member of the Selection Committee.  The order in which the names of the Applicants are drawn shall be recorded.  The first name drawn shall be the most highly ranked Applicant among those tied in a category and so on until all Applicants' names are drawn.

4.13  The Selection Committee shall repeat this process until all ties within the categories are resolved.

After all appeals to the Review Board, any new ties again were to be resolved using the above procedures, Westland Code, § 5.7.  After the appeals, the recommendations are to be forwarded to the City Council for it to certify the list with adjustments, Westland Code, § 5.8.

Appellants and Attitude Wellness argue that this tiebreaking procedure conflicts with the MRTMA.  However, nothing in the MRTMA prohibits this limited form of a tiebreaker.  Significantly, the City's lottery system is used only to decide ties among equally ranked applicants after all applications have been reviewed, scored, and ranked under the City's competitive application process.  Only equally ranked applicants participate in the lottery.  The City's ordinance otherwise complies with the MRTMA requirement that applicants for licenses be selected as part of a competitive process, MCL 333.27959(4), and the limited use of a lottery system to break ties among equally ranked applicants does not conflict with this requirement.  A lottery is not used, for example, to determine who, among all applications submitted, will receive a license.  Furthermore, the City Council still retains discretion to make the final decision on the licensees.  Accordingly, appellants have not demonstrated that the City's ordinance is invalid because it conflicts with the MRTMA.

Finally, appellants argue that the factors included in the City's scoring rubric violate their right to just compensation under the Fifth Amendment, US Const, Am V, "by requiring Appellants to incur hundreds of thousands of dollars in costs to comply with a municipal ordinance and application Process."  Initially, appellants did not assert this claim either in their amended complaints, or in response to the motions for summary disposition.  Therefore, this issue may be deemed waived.  *St Clair v XPO Logistics, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 356954 & 356968); slip op at 5 ("unpreserved issues raised for the first time on appeal may be deemed waived"), lv pending.  In any event, this argument is without merit.

"It is well settled that when the government directly seizes property in which a person has a property interest, a Fifth Amendment taking occurs, requiring the government to pay just

compensation." *AFT Mich v Michigan*, 315 Mich 602, 622; 893 NW2d 90 (2016). In this case, appellants do not identify a property interest that was seized. Although appellants suggest that the City imposed conditions that required them to incur hundreds of thousands of dollars to comply with the City's ordinance and application process, they do not specify what conditions required them to incur such costs. As explained earlier, although some of the scoring criteria allowed the Selection Committee to consider the extent of an applicant's proposed financial investment in developing property to operate a business establishment, no particular investment was required as a condition for obtaining a license. Therefore, we reject this claim of error.

In sum, appellants and Attitude Wellness have not demonstrated that they are entitled to relief on the ground that the City's adopted criteria for evaluating applications conflicts with the MRTMA.

## V. APPELLANTS' OTHER CLAIMS

The City and intervening defendants also moved to dismiss the additional claims raised by MHS Westland, Harper, and Exclusive under MCR 2.116(C)(7) and (8). The trial court did not err by dismissing these claims.

MHS Westland, Harper, and Exclusive alleged that the City's Selection Committee violated the OMA when it met in private to score the applications and arrive at the recommendations it made to the City Council regarding which applications qualified for licenses. We disagree.

The OMA provides that a public body must hold its meetings open to the public and deliberate and make its decisions at a meeting open to the public, MCL 15.263. In two recent cases, this Court held that the OMA does not apply to a municipality's review of marijuana license applications where that review is done by an individual or entity that does not constitute a public body. In *Pinebrook Warren, LLC v City of Warren*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 355989, 355994, 355995, 356005, 356011, 356017, 356023, 359269, & 359285); slip op at 18-23, lv pending, this Court held that the City of Warren's Review Committee's review of applications for medical marijuana licenses was not subject to the OMA because that committee was not a public body, given that it was not a legislative or governing body with authority to effective or formulate public policy. The Warren City Council established the Review Committee to handle the application-review process, but it did not delegate its authority to make or administer public policy and the city council retained its authority to make final decisions on the applications. As an advisory board to the city council, the Review Committee was not obligated to comply with the OMA because it was not operating as a public body.

Similarly, in *Yellow Tail Ventures*, ___ Mich App at ___; slip op at 8-9, this Court held that Berkley's city manager, assisted by other city employees, was not acting as a public body for purposes of the OMA when reviewing marijuana license applications. Although Berkley's ordinance allowed the city manager to review the applications before sending them to the city council, the OMA did not apply to the city manager's review process because he was not acting as a public body and the ultimate decision on which applications to approve was made by the city council.

In the case at bar, the City's ordinance created a Selection Committee to evaluate the applications under a written policy adopted and approved by the City Council. Westland Code, § 27-12(a). The role of the Selection Committee was to score and rank the applications in accordance with the approved Policy. Westland Code, § 27-12(b). The Selection Committee consisted of three public servants or employees, not elected officials, and it was not acting as a public body for purposes of the OMA. The Selection Committee's role was to act as an advisory board to the City Council, similar to the process in *Pinebrook Warren*. Because the Selection Committee was not operating as a public body, it was not required to comply with the OMA.

Appellants argue that the manner in which their applications were evaluated did not comport with due process. In *Pinebrook Warren*, ___ Mich App at ___; slip op at 26-28, this Court addressed and rejected due-process claims similar to those raised in this case, stating:

> Plaintiffs variously alleged claims involving the violation of the rights afforded by substantive and procedural due process. The touchstone of due process involves the protection of the individual against arbitrary government action. *Bonner*, 495 Mich at 224; *Cary Investments*, ___ Mich App at ___; slip op at 4-5. Due process includes both a substantive component and a procedural component; the "substantive component protects against the arbitrary exercise of governmental power, whereas the procedural component is fittingly aimed at ensuring constitutionally sufficient procedures for the protection of life, liberty, and property interests." *Bonner*, 495 Mich at 224; see also *Cary Investments*, ___ Mich App at ___; slip op at 4-5. The initial inquiry for both components is to identify the interest allegedly infringed to determine whether it falls within the definition of life, liberty, or property. If the interest at issue does not involve a life, liberty, or property interest, then the Due Process Clause affords no protection and the claim must fail. *Bonner*, 495 Mich at 224; *Cary Investments*, ___ Mich App at ___; slip op at 4-5.

> Plaintiffs' due-process claims, though alleged in varying terms, each involved claims that the City violated their right to have the facility licenses issued consistent with the requirements of the Marijuana Ordinance. Stated another way, each of their claims involved whether the City failed to follow its own laws in the issuing of the licenses and violated the due-process protections afforded to applicants for a license. The question, therefore, is whether an applicant's application for a license involves a life, liberty, or property interest for which the Due Process Clause provides protection.

> In general terms, a license does not convey property rights under Michigan law. See *Morse v Liquor Control Comm*, 319 Mich 52, 66; 29 NW2d 316 (1947). Our Supreme Court, however, has recognized that once the government issues a license, the holder of a license has a sufficient property interest in the license to invoke the protections of the Due Process Clause. See *Bundo v Walled Lake*, 395 Mich 679, 688-696; 238 NW2d 154 (1976). The Court explained that, although the license holder holds the license by the grace of the government, once issued, the license holder can reasonably assume that the government will renew the license when the renewal procedure provides for renewal as a matter of course. *Id*. at 692, 693, 695. The same is not true for a first-time applicant for a license. This Court

-26-

has explained that first-time applicants for licenses are not entitled to minimal due process. *Cary Investments*, ___ Mich App at ___ (citation omitted); slip op at 5. This is because a property right must be premised on more than a "mere unilateral expectation." *Bundo*, 395 Mich at 692. A person must have more than an " 'abstract need or desire' " for a benefit in order to have a property interest in it; he or she must have a " 'legitimate claim of entitlement' " to the benefit. *Id*., quoting *Bd of Regents of State Colleges v Roth*, 408 US 564, 577; 92 S Ct 2701; 33 L Ed 2d 548 (1972). Because a first-time applicant for a license cannot show that he or she has an entitlement to the license, a first-time applicant has no property interest in the issuance of the license. See *Maxwell v Dep't of Environmental Quality*, 264 Mich App 567, 572; 692 NW2d 68 (2004); see also *Wong v City of Riverview*, 126 Mich App 589, 592-593; 337 NW2d 589 (1983); *Barr v Pontiac City Comm*, 90 Mich App 446, 451; 282 NW2d 348 (1979) ("We agree with defendant's contention that there is no protected interest in a mere expectation a new license applicant or transferee might possess."). For that reason, the procedural protections of the Due Process Clause do not apply to the determination whether to issue a license in the first instance. This Court's review of a city's decisions regarding first-time applicants is "extremely narrow[,]" . . . "limited only to whether the city has acted arbitrarily and capriciously." *Cary Investments*, ___ Mich App at ___ (citation omitted); slip op at 5.

In this case, because plaintiffs were first-time applicants for a facilities license, they had no property interest in a license that required the City to provide them procedural due process. *Id*. For that reason, plaintiffs' procedural due-process claims premised on the failure to follow the Marijuana Ordinance or the OMA failed as a matter of law because the City followed the process prescribed by the Marijuana Ordinance, the Review Committee did its part, and the City Council made the ultimate decisions regarding selection of the applicants to receive licenses. As explained in *Cary Investments*, "due process merely ensures a fair procedure, not any particular outcome." *Cary Investments*, ___ Mich App at ___; slip op at 6. "The right to due process guaranteed by the United States Constitution and the Michigan Constitution of 1963 does not empower courts to micromanage the decision-making of governmental entities." *Id*. at ___; slip op at 7. [Footnote omitted.]

Applying this analysis to this case, appellants, as first-time applicants, do not possess any property rights in the licenses themselves that required procedural due process.

The Court in *Pinebrook Warren*, ___ Mich App at ___; slip op at 28-30, also addressed whether applicants have a due-process claim with regard to the procedures adopted by a municipality, stating:

On appeal, plaintiffs assert that, notwithstanding the law involving first-time applicants for a license, they had an interest in the procedures for obtaining a license for two reasons. They first assert that when the procedures for issuing a license so circumscribe the issuing agency's authority that an applicant has a reasonable expectation of receiving the license, due process protects the applicant's

-27-

right to have the issuing agency follow the procedures. See, e.g., *Med Corp, Inc v City of Lima*, 296 F3d 404 (CA 6, 2002); *Walz v Town of Smithtown*, 46 F3d 162, 168 (CA 2, 1995); *Yale Auto Parts, Inc v Johnson*, 758 F2d 54, 58-59 (CA 2, 1985) (stating that even a violation of a state's own laws does not give rise to a due-process violation; there must be a very strong likelihood that the application would be granted absent the violation). These authorities recognize that a government can create a property interest in an application process by establishing a rule or policy that circumscribes the authority to deny the benefit to an applicant who meets the requirements of the law or policy. See *Med Corp*, 296 F3d at 409-411; *Walz*, 46 F3d at 168 ("We believe the discretion of the Superintendent of Highways to deny an excavation permit is so circumscribed that the Walzes possessed an entitlement to a permit."). Even if these authorities applied in Michigan, this case does not fall within those rules.

The Marijuana Ordinance includes numerous requirements for the applicant, but it does not guarantee a license to any applicant, even if the applicant submits the required materials and otherwise meets the minimum requirements for a license. Indeed, the Marijuana Ordinance allows the City Council to disapprove applications depending on the scoring of the 17 factors and its further analysis of the applications and the applicants' plans and qualifications. Marijuana Ordinance, § 19.5-14(1) and (2) (giving the City Council the final authority to approve an application and requiring the City Council to confirm compliance and rank applications under certain circumstances, but not requiring the City Council to approve applicants on the basis of rankings). The Marijuana Ordinance provided the City Council with unfettered discretion to approve or disapprove the grant of a license. In fact, the City Council had no obligation to issue any licenses, no matter how qualified the applicants. See Marijuana Ordinance, § 19.5-7(3) (setting the maximum number of provisioning centers and then stating that the City has no obligation to issue licenses and further providing that the City can issue them "whenever they want"). Under these circumstances, it cannot be said that the Marijuana Ordinance contained rules that so limited the discretion of the decision-makers that any applicant had a reasonable expectation that he or she would receive a license if he or she complied with the application process. Indeed, under the plain terms of the Marijuana Ordinance, no applicant can be said to have had a reasonable expectation of receiving a license no matter how qualified.

Plaintiffs also suggest that they had a protected property interest because they expended funds in complying with the application process and purchased interests in real property as part of that process. The fact that plaintiffs spent sums and acquired property in the hope that they would receive a license, however, does not establish that they were entitled to a license. See *Bundo*, 395 Mich at 692. Such expenditures do not give rise to a property interest in a license that has yet to be issued. For these reasons, the trial court did not err when it determined that plaintiffs' claims that the City violated procedural due process failed as a matter of law. No first-time applicant has an interest in the procedures for obtaining a license under the Marijuana Ordinance protected by the Due Process Clause. See *Maxwell*,

264 Mich App at 572; *Wong*, 126 Mich App at 592-593; *Barr*, 90 Mich [A]pp at 451.

Plaintiffs also variously asserted that the City violated substantive due process in the manner by which they denied the licenses at issue. The substantive component of due-process protections protects a person from the arbitrary exercise of government power. See *Bonner*, 495 Mich at 224; *Cary Investments*, ___ Mich App at ___; slip op at 4-5. The substantive protections protect a person from both arbitrary laws and the arbitrary exercise of government authority; the distinction depends on whether the plaintiff is attacking the constitutionality of a law or attacking an act by a governmental agent. See *Mettler Walloon LLC v Melrose Twp*, 281 Mich App 184, 198; 761 NW2d 293 (2008). For laws that do not affect a fundamental liberty interest, a plaintiff must demonstrate that the law is not reasonably related to a legitimate governmental interest. See *Bonner*, 495 Mich at 227. If the plaintiff is attacking a governmental action rather than a law, then the plaintiff must show that the governmental actor took action that was so arbitrary as to shock the conscience. *Mettler Walloon*, 281 Mich App at 200; *Cary Investments*, ___ Mich App at ___ (citation omitted); slip op at 4. But in both instances the plaintiff must still establish that the law or act affected an interest protected by due process. See *Bonner*, 495 Mich at 225 (stating that the first inquiry is whether the plaintiff has identified an interest that has been infringed by the law or act, which comes within the definition of life, liberty, or property). Because plaintiffs failed to identify such an interest, their due-process claims failed as a matter of law. But even if the protections of substantive due process were to apply to any and all acts or laws without regard to whether the law or act infringed an interest protected by due process, plaintiffs did not allege a claim for such a violation.

In this case, plaintiffs did not raise a claim that the Marijuana Ordinance was not reasonably related to a legitimate government interest—that is, they do not challenge the constitutionality of the ordinance. Rather, they alleged that the Review Committee's handling of the applications was so arbitrary that it shocked the conscience. Plaintiffs assert that the Review Committee and City Council did not follow the Marijuana Ordinance and that the individual members of the Review Committee had no legitimate reasons for scoring the factors beyond applying their own personal preferences. Those allegations, however, were not sufficient to state a violation of substantive due process.

As this Court has noted, substantive due process does not protect persons from every governmental action that infringes liberty or damages property. Rather, the plaintiff must allege facts that—if true—would show that the actor used governmental power to oppress or acted so irrationally that its conduct lacked any legitimate state interest; the key consideration is that the conduct shocks the conscience. See *Mettler Walloon*, 281 Mich App at 202. Picking winners and losers, although it might seem unfair, does not amount to irrational conduct or oppression; and does not shock the conscience. *Id*. Even a violation of state law by the governmental actor will not, absent more, cause the act to meet the shocks-the-conscience standard. *Id*. at 202-203.

-29-

Plaintiffs did not allege any acts that were so irrational or so egregious that it could satisfy a shocks-the-conscience standard. They merely alleged that the Review Committee and City Council did not properly follow the law and acted, in their view, arbitrarily when it selected the 15 entities that received licenses. Some argue that the individual members of the Review Committee changed scores to alter which entities would receive a license. A decision to award licenses to a group of preferred entities over a group of entities that were not preferred, even if done selfishly and with complete disregard for the law, does not ordinarily rise to the level of shocking the conscience. *Id*.

Plaintiffs also argue that the trial court's decision to grant summary disposition and dismiss their due-process claims was premature. They maintain that the trial court should have granted them the opportunity to amend their complaints to allege the facts necessary to support a claim premised on substantive due process, and they maintain that the order dismissing their claims was premature because discovery had not been completed.

The trial court had an obligation to give plaintiffs an opportunity to amend their complaints to better state their due-process claims. See MCL [sic, MCR] 2.116(I)(5). However, the trial court had no obligation to do so if the evidence then before the court showed that amendment would not be justified. *Id*. The trial court stated that, given the absolute discretion provided under the Marijuana Ordinance, no one had the right to expect anything under the ordinance, such that no change in the allegations could establish a due-process violation. The trial court correctly identified the flaw in plaintiffs' claims. Therefore, the trial court did not have to afford plaintiffs an opportunity to amend their complaints before it could grant the City's motion and dismiss the due-process claims under MCR 2.116(C)(8). Moreover, although a motion under MCR 2.116(C)(10) might be premature if done before the close of discovery, *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009), a motion under MCR 2.116(C)(8) accepts the facts alleged in the complaint as true. Indeed, a motion under MCR 2.116(C)(8) cannot be opposed or supported with affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(2). Accordingly, whether the parties completed discovery lacked relevance to the court's decision regarding if plaintiffs alleged a claim on which relief could be granted. The trial court, therefore, did not err when it dismissed plaintiffs' due-process claims under MCR 2.116(C)(8). [Footnote omitted.]

See also *Cary Investments*, ___ Mich App at ___; slip op at 4-7.

As discussed earlier, appellants, as unsuccessful applicants for licenses, did not have property interests in any licenses, but they had limited due-process rights associated with the application process. Appellants seem to suggest that the application process used by the City was arbitrary and capricious. The primary basis for this argument is that the criteria used by the City violated the MRTMA because it involved consideration of factors other than whether an applicant was best suited to operate a business in compliance with the MRTMA. But as explained earlier, the City was permitted to consider criteria suited to its own local concerns not specifically

mentioned in that act. Furthermore, the MRTMA allows municipalities to exercise some discretion, consistent with the MRTMA, when selecting among competitive applications.

Appellants further argue that the selection criteria violates due process as applied to them, but they fail to elaborate on this argument. To the extent that they are challenging actual scoring decisions, they cannot establish a due-process violation on this basis because a court will not involve itself with the discretionary decision-making process of local government leaders. *Cary Investments*, ___ Mich App at ___; slip op at 7 ("Asking this Court to second-guess the selection committee's scoring of the numerous applicants competing for three licenses fundamentally misapprehends our role in enforcing the constitutional right to due process.").

MHS Westland, Exclusive, and Harper asserted claims for gross negligence, which were based on the following allegations

178. Defendants, including city council members, are a legislative body charged with fairly exercising its discretion in a manner that is not arbitrary, capricious, or unreasonable.

179. Defendants, through its City Council, Administrative Office, and Committee, owed a duty to all applicants and/or licensees to properly process said applications, properly adhere to the Defendants' own Ordinances, properly comply with applicable state law, and properly administer and issue licenses to applicants in a lawful and legal manner.

180. Defendants breached their duties to Plaintiff through its wrongful actions which rubber stamped the committee's recommendations without review or consideration as mandated by the Ordinance.

181. Defendants blatantly ignored numerous comments made by council person Green related to the fraud and recklessness surrounding the marihuana process. These allegations were made several times over the past several years and the remaining council refused to investigate further.

182. Defendants had a duty to investigate these allegations prior to rubber stamping the marihuana licenses.

183. Defendants' conduct was willful, wanton and intentionally reckless without justification or excuse.

184. Defendants' conduct was reckless and demonstrated a substantial lack of concern for whether injury or harm to Plaintiff or other applicants would result.

185. Defendants' conduct was the proximate, immediate, and direct cause of the foreseeable harm and injury suffered by Plaintiff.

186. Defendants' wrongful conduct as described above constitutes gross negligence.

187. As a direct and proximate result of Defendants' gross negligence, Plaintiff has suffered immediate and irreparable harm.

188. Additionally, City Council owed a duty of care and diligence to the residents and business owners in the City of Westland, including Plaintiff.

189. A reasonably prudent person acting with ordinary care and diligence would have investigated any alleged flaws in the process and otherwise reached the decision to table the license and conduct a proper investigation before voting.

190. Defendants breached their duty of care by failing to properly review the process and instead rushed a vote to rubber stamp licenses.

191. Defendants' decision to pass the license resolution demonstrated a careless disregard for the rights of Plaintiff, other similarly situated licensees, and the tax paying residents of the City of Westland.

192. In a three-day period, Defendants allegedly reviewed 21,000 pages of documents and approved applicants. However, several Defendants stated that they did not actually review the documents but nonetheless still approved applicants.

193. Defendants' decision to pass the marijuana license resolution on March 15, 2021 was a willful, wanton, and intentionally reckless and was made without justification or excuse.

194. As a proximate result of Defendants conduct, Plaintiff has suffered damages.

In its motions for summary disposition, the City argued that there was no question that the allegations involved a governmental function, entitling defendants to summary disposition under MCR 2.116(C)(7) on the basis of governmental immunity. Appellants' allegations involved the passage of a local ordinance and the City's application of that ordinance. The City and its officials were clearly engaged in the exercise of a governmental function and the City, as a governmental agency, is therefore immune from tort liability. MCL 691.1407(1). The City also argued that the individual council members were entitled to immunity under the "legislator" exception in MCL 691.1407(5) because they were acting within the scope of their legislative authority. MCL 691.1407(5). Judges, legislators, and the highest-ranking executive appointed official at any level of government are entitled to absolute immunity under MCL 691.1407(5). *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008). The individual council members fall within the scope of the "legislator" exception in MCL 691.1407(5). Accordingly, the City Council members are also entitled to immunity.

In response to the motions for summary disposition, MHS Westland, Harper, and Exclusive argued that because they alleged a claim for gross negligence, further discovery should be allowed on this issue. However, they cited only their complaints and the City's ordinance in support of their argument that further factual development could establish support for a gross-negligence claim. They claimed that the City, the City Council, and the individual council members failed to investigate allegations by one of their members, defendant Tasha Green, of fraud or other

improprieties in the selection process. However, there were no allegations that any of the defendants were responsible for any of the allegedly fraudulent acts, only that they failed to take action to investigate these allegations before voting. Because these defendants are protected by absolute immunity when acting within the scope of their positions, and there are not allegations that they were not acting within the scope of their authority as council members, the trial court did not err by dismissing this claim under MCR 2.116(C)(8). While MHS Westland, Harper, and Exclusive argue that further discovery should be permitted on this issue, they fail to specify any facts that are likely to reveal support for their claims. See *Marilyn Froling Trust*, 283 Mich App at 292-293.

MHS Westland, Harper, and Exclusive also asserted a claim for breach of contract, which was based on the following allegations:

196. Plaintiff pleads this count in the alternative in the event the Court finds there is a valid contract between the parties.

197. Defendants in its first responsive pleading filed on July 7, 2021 are of the opinion that a contract exists between Plaintiff and Defendants.

198. Based on Defendants['] allegation that a contract exists, Defendants breached the terms of the contract by not adhering to the four comers of the contract and unilaterally applying definitions that do not exist to words such as *property*.

199. As a proximate result of Defendants' conduct, Plaintiff has suffered damages which are still being calculated.

200. Plaintiff requests that the Court enter an order in favor Plaintiff.

MHS Westland, Harper, and Exclusive argue that if they have a contract claim, the City breached it by the manner in which it interpreted and applied its ordinance and the criteria to select licensees. This claim is based on the same arguments discussed earlier regarding whether the City's ordinance and scoring criteria violate the MRTMA. We have already rejected those arguments. Accordingly, they also fail to establish an independent claim for breach of contract. Therefore, the trial court properly dismissed this claim under MCR 2.116(C)(8).

Affirmed.

/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra
/s/ Michael J. Riordan